# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

TEXAS AUTO CAPITAL, LLC,                  §
                                          §
      *Plaintiff,*                      §
                                          §
v.                                        §   Civil Action No. 4:24-cv-734
                                          §   Judge Mazzant
DAIRYLAND COUNTY MUTUAL                    §
INSURANCE COMPANY OF TEXAS,[1]            §
                                          §
      *Defendant.*                     §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss or Alternatively Transfer Venue (Dkt. #4). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part and DENIED in part**.

## BACKGROUND

### I.       Factual Background

This is an insurance dispute. Texas Auto Capital, LLC ("Plaintiff") sold a 2020 Dodge Durango to Averi Rodriguez ("Rodriguez") insured by Patriot General Insurance Company ("Patriot" or "Defendant") (Dkt. #2 at p. 1).[2] Patriot claims that Rodriguez is a Washington resident (Dkt. #4 at p. 3).[3] According to Plaintiff, the purchase and sale agreement required

---

[1] At the outset, the Court notes that Plaintiff has no live cause of action against Dairyland. Plaintiff's First Amended Petition—the live pleading—asserts a cause of action against Patriot General Insurance Company alone but maintains Dairyland (a former defendant) as the named defendant in the caption (Dkt. #2). The Court notes the discrepancy, but, at least for the time being, keeps the case caption as styled.

[2] Though the case is styled "Texas Auto Capital, LLC v. Dairyland County Mutual Insurance Company of Texas," Defendant averred in its Notice of Removal that "the only defendant currently in the lawsuit is Patriot" (Dkt. #1 at p. 1). To date, Plaintiff has not disputed that premise. The Court, accordingly, refers to Defendant as "Patriot."

[3] The Court notes that the documents attached to Patriot's Notice of Removal indicate that Rodriguez, seemingly, has had at some time or another, both a Washington and Texas address (*See* Dkt. #1 at pp. 10, 31, 36, 38). But the Court accepts Patriot's factual contention regarding his residence as true under Local Rule CV-7(d).

Rodriguez to maintain an insurance policy on the vehicle (Dkt. #2 at pp. 1–2). Subsequently, an insurance policy was issued (Dkt. #2 at p. 2). That policy identified Plaintiff as the lienholder/loss payee (Dkt. #2 at p. 2). The instant dispute arose following a car accident during which the vehicle was allegedly deemed a total loss following a police chase that took place in Kent, King County, Washington (Dkt. #1 at p. 36; Dkt. #2 at p. 2; Dkt. #4 at pp. 2–3). Plaintiff made an insurance claim as a lienholder/loss payee, which Patriot denied (Dkt. #2 at p. 2; Dkt. #4 at p. 3). As a result, Plaintiff brings promissory estoppel and breach of contract claims against Patriot, as well as causes of action under the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code (Dkt. #2 at pp. 2–3).

## II.    Procedural History

Plaintiff originally filed this suit in Texas state court in July of 2024, naming only Dairyland County Mutual insurance Company of Texas ("Dairyland") as a defendant (Dkt. #4 at p. 1). On August 7, 2024, Plaintiff filed a First Amended Petition that did not include Dairyland as a defendant and brought no claims against Dairyland (Dkt. #2). In fact, the only reference to Dairyland was in the case caption (*See* Dkt. #2 at p. 1).

After a copy of Plaintiff's First Amended Petition was emailed to Patriot's attorney, Patriot filed its Notice of Removal on August 15, 2024 (Dkt. #4). Plaintiff did not move to remand the matter. On September 3, 2024, Patriot filed its Motion to Dismiss or Alternatively to Transfer Venue (Dkt. #4). While Plaintiff did not respond, the Certificate of Conference accompanying Patriot's Motion indicates that Plaintiff does oppose Patriot's Motion (Dkt. #4 at p. 13). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404, a district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL—585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

3

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Id.* at 313, 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

## ANALYSIS

Before the Court can resolve the instant matter, it must ensure that it has jurisdiction to hear the case. Though Patriot's removal is unopposed, the Court has an independent obligation to ensure that jurisdiction exists before it can proceed. *See Biziko v. Van Horne*, 981 F.3d 418, 420 (5th Cir. 2020). Having detected a potential jurisdictional issue—or at least what could become the eventual subject of argument—the Court first addresses whether the case is properly before the

Court. Only then can the Court turn to the merits of the instant Motion. Ultimately, the Court is satisfied that, at this stage, the Court may exercise jurisdiction pursuant to 28 U.S.C. § 1332.

## I.    Jurisdiction Under 28 U.S.C. § 1332

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Weaver v. Zurich Am. Ins. Co.*, No. Civ. A. H–10–1813, 2010 WL 3910053, at *1 (S.D. Tex. Oct. 1, 2010). The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). A district court must remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

The Court does not take on the inquiry before it with the benefit of full briefing, as Plaintiff has not filed a brief on the issue of removal jurisdiction or the propriety of a transfer. As a result, the Court must piece together the history of this case from Patriot's Notice of Removal (Dkt. #1) and the accompanying exhibits (Dkt. #3). In its Notice of Removal, Patriot claims to be the sole defendant in this matter and alleges that Dairyland is no longer a defendant (Dkt. #1 at pp. 1–2; *see supra* notes 1, 2). Plaintiff filed its Original Petition on July 1, 2024, against Dairyland alone (Dkt. #1 at p. 2; Dkt. #3-5 at p. 2). Then, as Patriot notes, on August 7, 2024, Plaintiff filed its First

Amended Petition, which kept Dairyland in the case caption, but did not otherwise name Dairyland as a defendant (Dkt. #1 at p. 2; Dkt. #3-5 at p. 2). Plaintiff's First Amended Petition does not state a single cause of action against Dairyland (*See* Dkt. #3-5 at pp. 8–12). Further, Plaintiff electronically served its First Amended Petition on Patriot's counsel, Russel Bowman ("Bowman") (Dkt. #3-5 at p. 13). Patriot argues that Plaintiff's omission of Dairyland as a Defendant in its First Amended Petition, and the omission of a cause of action against Dairyland in what is now the live pleading, amounts to a dismissal (Dkt. #1 at pp. 1–2). After receiving the First Amended Petition, Patriot filed its Notice of Removal (Dkt. #1 at p. 2).

Assuming for a moment that Plaintiff's omission of Dairyland does operate as a dismissal, that dismissal comes with great consequence. Patriot is a Massachusetts corporation with its principal place of business in Wisconsin (Dkt. #1 at p. 3). Thus, it is a citizen of Massachusetts and Wisconsin. *See* 28 U.S.C. § 1332(c)(1). Plaintiff is a Texas limited liability company with one member, Alp Yilmaz, who is a Texas domiciliary (Dkt. #1 at pp. 2–3). Thus, Plaintiff is a citizen of Texas. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (a limited liability company is a citizen of each state where its members or managers are citizens). But here is the rub: Dairyland, Patriot alleges, is a citizen of Texas (Dkt. #1 at p. 1). Hence, if Dairyland remains a live defendant in this case, assuming the truth of Patriot's statement that Dairyland and Plaintiff are citizens of Texas, then 28 U.S.C. 1332(a)'s complete diversity requirement is lacking. Moreover, under 28 U.S.C. § 1441(b)(2), the case would not be removable because Dairyland is a forum defendant. Therefore, if Dairyland remains a defendant, the Court cannot exercise jurisdiction.[4] Accordingly, the Court's jurisdictional analysis is tri-pronged and will proceed as follows: (1)

---

[4] This case does not purport to present a federal question.

whether Dairyland is a defendant in this case. If it is not, the Court will go on to determine whether: (2) the remaining parties are completely diverse; and (3) whether the amount in controversy requirement is satisfied. If Dairyland is a Defendant, the Court must remand the case to state Court for want of jurisdiction.

### A.    Dairyland's Involvement

As mentioned, according to Patriot, though Dairyland was once a defendant in this matter, it is no longer as a result of Plaintiff's First Amended Petition (Dkt. #1 at pp. 1–2). The Court begins with Plaintiff's First Amended Petition (Dkt. #3-5 at pp. 8–12). Indeed, it does not purport to bring a claim against Dairyland whatsoever (*See* Dkt. #3-5 at pp. 8–12). True enough, Dairyland remains the named defendant in the case caption (*See* Dkt. #3-5 at p. 8). But that is the only mention of Dairyland in the entire First Amended Petition (*See* Dkt. #3-5 at pp. 8–12). Moreover, the Certificate of Service that accompanied the First Amended Petition only contemplates service of one individual: Bowman—Patriot's attorney of record (*See* Dkt. #3-5 at p. 13; Dkt. #1 at p. 2). The question, then, is whether the omission of Dairyland constitutes dismissal. It does.

In support of its position that Plaintiff dismissed any claims against Dairyland by virtue of the substance of Plaintiff's First Amended Petition, Patriot points the Court to numerous cases from the Texas Supreme Court, as well as various state appellate decisions, where the Texas Supreme Court found no reversible error (*See* Dkt. #1 at p. 2). Generally, district courts have applied Texas law to determine whether dismissal is effective in state court prior to removal. *See, e.g.*, *Lopez v. Canal Ins. Co.*, No. EP-14-CV-00372-KC, 2015 WL 4094277, at *7 (W.D. Tex. July 7, 2015) (quoting *Walton v. Prudential Prop. & Cas.*, No. 05-98-01134-CV, 2001 WL 1013569, at *1 (Tex. App.—Dallas Sept. 6, 2001, no pet.)); *E-Dealer Direct v. Bank of Am., N.A.*, No. EP-21-CV-

62-DB, 2021 WL 1381269, at *2 (W.D. Tex. Apr. 12, 2021) (citing *Boulanger v. Devlar Energy Mktg., LLC*, No. 3:15-CV-3032-B, 2015 WL 7076475, at *4 n.4 (N.D. Tex. Nov. 13, 2015)). That makes sense, given that state procedural rules govern before removal. *See* FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action *after* it is removed from a state court.") (emphasis added).

Sure enough, in Texas, "'[t]he omission of a defendant from a live pleading operates as a dismissal of the omitted defendant even if the omission is inadvertent.'" *Lopez*, 2015 WL 4094277, at *7 (W.D. Tex. July 7, 2015) (quoting *Walton*, 2001 WL 1013569, at *1). Indeed, the caselaw upon which Patriot relies says just that. *See, e.g.*, *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972) (citation omitted) (observing "the rule that [an] amended petition, by omitting a defendant, operate[s] as a voluntary dismissal as to that party" without prejudice).

But it is not as simple as Patriot contends. The inquiry does not put form over substance. To the contrary, "'the petition as a whole must be considered in determining who is being sued.'" *Lopez*, 2015 WL 4094277, at *7 (quoting *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733 (Tex. App.—Dallas 2000, pet. denied); *Cox v. Union Oil Co. of Cali.*, 917 S.W.2d 524, 526 (Tex. App.—Beaumont 1996, no pet.)). Accordingly, under Texas law, "'omission of a party's name from the preamble [of a Petition] does not" necessarily constitute dismissal. *Id.* (quoting *Cox*, 917 S.W.2d at 526). But here, Plaintiff did not simply omit Dairyland from the preamble and leave it in the caption (*See* Dkt. #2). To the contrary, Plaintiff's First Amended Petition only mentions Dairyland in the caption, was only served on Patriot, and does not appear to contemplate any cause of action against Dairyland whatsoever (*See* Dkt. #2; Dkt. #5-5 at p. 13). Accordingly, the Court agrees with Patriot. There is no live claim against Dairyland. Thus, the remaining question is whether the Court may exercise jurisdiction under 28 U.S.C. § 1332(a). It can.

### B.    Diversity of Citizenship

Subject matter jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship between every plaintiff and every defendant and the amount in controversy exceeds $75,000. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). Starting with the first element, the party invoking jurisdiction under § 1332 must show that the parties are completely diverse. *Id.*; *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). For diversity purposes, an individual is considered a citizen of the state where she is domiciled. *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 555–56 (5th Cir. 1985). An individual is domiciled where she has a fixed residence with the intent to remain there indefinitely. *Id.* A corporation is a citizen of every state in which it is incorporated and of the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). A limited liability company is a citizen of each state where its members or managers are citizens. *Harvey*, 542 F.3d at 1080; *Temple Drilling Co v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 394 (5th Cir. 1991).

Having determined that Dairyland is no longer a party to this suit, the question is whether Plaintiff and Patriot are diverse. The answer is yes, and arriving at that conclusion is a simple matter. Patriot is a Massachusetts corporation with a principal place of business in Wisconsin (Dkt. #1 at p. 3). Thus, it is a citizen of Massachusetts and Wisconsin. *See* 28 U.S.C. § 1332(c)(1). According to Patriot, Plaintiff is a Texas limited liability company with one member, Alp Yilmaz, who is a Texas domiciliary (Dkt. #1 at pp. 2–3). Plaintiff's state court pleadings do not discuss its citizenship as a limited liability company (*See* Dkt. #3-5). But Plaintiff does not dispute Patriot's contentions. Thus, at this time, the Court concludes that Plaintiff is a citizen of Texas. Accordingly, the parties are completely diverse.

### C.      Amount in Controversy Requirement

Because the parties are completely diverse, the Court turns to the final jurisdictional inquiry: whether the amount in controversy requirement of more than $75,000 is satisfied. In the Fifth Circuit, "[i]f the plaintiff's state court petition specifies a dollar amount of damages, that amount controls if made in good faith." *Guijarro v. Enter. Holdings, Inc.*, 39 F.4th 309, 314 (5th Cir. 2022). Thus, courts generally accept a plaintiff's good faith claim unless it is clear to a legal certainty from the face of the pleadings that the plaintiff cannot recover the amount claimed. *See, e.g.*, *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

Plaintiff's First Amended Petition seeks "[m]onetary relief of $100,000.00 or less" (Dkt. #2 at p. 1). That amount controls, as long as it was made in good faith. *See Guijarro*, 39 F.4th at 314. For its part, Patriot argues that the amount in controversy requirement is satisfied given the value of the claim at issue and Plaintiff's request for treble damages (*See* Dkt. #1 at pp. 3–4). The Court finds nothing on the face of Plaintiff's pleadings that her claim for "[m]onetary relief of $100,000.00 or less" was not made in good faith.[5] And, while not controlling, the Court observes that Patriot believes that Plaintiff seeks more than $100,000 (*See* Dkt. #1 at p. 4).

Because the parties are completely diverse, and because the amount in controversy exceeds $75,000, the Court has original subject matter jurisdiction over this case. *See* 28 U.S.C. § 1332(a). Removal was, therefore, proper. *See* 28 U.S.C. § 1441(a).

---

[5] Even if Plaintiff's claim for $100,000 or less was made in bad faith, it is clear that Plaintiff's potential recovery exceeds $75,000.

## II.    Section 1404(a) Transfer or Dismissal

Having determined that removal was proper, the Court now turns to the matter at hand: whether this case should be dismissed for *forum non conveniens* or transferred under 28 U.S.C. § 1404(a). Patriot requests that the Court dismiss the case or transfer it to the Western District of Washington, Seattle Division for six reasons:

1.    the accident that resulted in the loss of the vehicle took place in Kemp, King County, Washington;

2.    Patriot issued the insurance policy at issue in this case to a resident of Washington;

3.    all of the material witnesses that might testify in this case, as well as the evidence, are located in Washington;

4.    the entire case may be litigated in Washington;

5.    Washington will apply Texas law to the issues this case presents; and

6.    aside from being home to Plaintiff, the state of Texas has no connection to this case.

(Dkt. #4 at pp. 1–2). Patriot contends that the net total of these bases counsel that this case should be transferred to the Western District of Washington, Seattle Division, if not dismissed (Dkt. #4 at pp. 1–2). As set forth below, the Court agrees with Patriot, though only in part. The Court only addresses Patriot's request to transfer the case because this relief is appropriate. *See Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 767 (E.D. Tex. 2000) ("[D]ismissal of a case under the doctrine of *forum non conveniens* is improper provided there is an alternative, federal forum in which the case could have been brought."). As a threshold matter, because Plaintiff has not responded to Patriot's Motion, the Court accepts as true the factual allegations in Patriot's Motion. *See* Local Rule CV-7(d).

### A.    Whether the Action Could Have Been Brought in the Western District of Washington

The Court begins at step one. That is, the Court must first determine whether the suit could have originally been filed in the destination venue. *Volkswagen II*, 545 F.3d at 312. Patriot contends that the Western District of Washington, Seattle Division is an available, alternative forum because diversity jurisdiction under 28 U.S.C. § 1332(a) exists and Patriot is subject to personal jurisdiction there (Dkt. #4 at p. 5). As the Court discussed previously, the federal courts have jurisdiction under 28 U.S.C. § 1332(a). And Patriot has admitted that it is subject to personal jurisdiction in Washington (Dkt. #4 at p. 5). But Patriot's Motion omits a discussion of whether venue would be proper in Washington (*See* Dkt. #4). That is a critical part of the inquiry. *See Volkswagen II*, 545 F.3d at 312 (citing 28 U.S.C. § 1391) (a case "might have been brought" in a district if venue is proper there). Rest assured, the Western District of Washington would have been a proper venue.

Under 28 U.S.C. § 1391, venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if no other district could be home to the action, any judicial district in which any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). Because the Court accepts Patriot's claims that the auto accident involved in this case occurred in Kemp, King County, Washington, and the acts or omissions that Patriot allegedly perpetrated occurred in the same county, venue would be proper in the Western

District of Washington, Seattle Division. *See id.* § 1391(b)(2).[6] Because the Western District of Washington, Seattle Division, is a venue in which the case could have been brought, the Court now turns to analyze the private and public interest factors to determine whether transfer under § 1404 is appropriate. It is.

### B.    Private Interest Factors

In *Volkswagen II*, the Fifth Circuit provided the Court with four private interest factors to consider when determining whether to transfer a case: "(1) the relative ease of access to the sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315.

#### 1.    *Relative Ease of Access to Sources of Proof*

"The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 272201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316). Patriot notes that "[a]ll of the key witnesses involved in this matter (the police officers, Patriot's insured, and the driver of the Durango) are all located in Washington, and are witnesses that are expected to be called upon to testify in this matter" (Dkt. #4 at p. 8). Thus, Patriot argues, these witnesses are not "readily available" in Texas (Dkt. #4 at p. 8). As Plaintiff has not responded, the Court has no choice but to accept these factual premises as true. But no less, the Court notes that Plaintiff is seemingly at home in Texas.

---

[6] Kemp, King County, Washington is within the Seattle Division of the Western District of Washington.

Patriot also observes that the evidence related to the subject of dispute is "more readily available in Washington" (Dkt. #4 at p. 8). As stated previously, and as Patriot explains, the accident with the vehicle involved in this case occurred in Washington (Dkt. #4 at p. 8). As a direct result, the accident records are also in Washington (Dkt. #4 at p. 8). According to Patriot, "no relevant evidence [is] connected to or located in Texas" (Dkt. #4 at p. 8). Nothing in the record suggests otherwise. Thus, Patriot's unanswered arguments on this factor win the day. Accordingly, this factor weighs in favor of a transfer.

2. *Availability of Compulsory Process to Secure Attendance of Witnesses*

Next, the Court asks whether transfer benefits the availability of compulsory process. *See Volkswagen II*, 545 F.3d at 315. It does. A court's subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party of party's officer; and (ii) is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c).

As Patriot correctly explains, because "all of the key witnesses involved in this matter . . . are . . . located in Washington," the Court lacks subpoena power to compel their appearance (Dkt. #4 at p. 8). *See also* FED. R. CIV. P. 45(c). Though at the moment the Court is unaware of the precise addresses of the so-called "key witnesses," because Plaintiff did not respond, the Court takes Patriot at its word. Assuming the truth of Patriot's contentions regarding the location of the witnesses, because Washington exceeds the Court's 100-mile subpoena power radius, this factor weighs in favor of transferring the case to Washington.

3.     *Cost of Attendance for Willing Witnesses*

The third factor the Court must consider is whether the costs of attendance for willing witnesses would benefit from a transfer. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II,* 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I,* 371 F.3d at 204–05. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genetech, Inc.,* 556 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). "[A]mong party and non-party key-witnesses, a court should give greater weight to the availability and convenience of non-party, key-witnesses." *Mid-Continent Cas. Co. v. Petrol. Sols. Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009).

Patriot does not consider this factor head-on. Instead, it appears to consider this factor as a general one regarding "the convenience of the parties" (Dkt. #4 at p. 9). For witnesses located in Washington, the cost of attending a trial in the Eastern District of Texas far surpasses that of attending one in Washington (*See* Dkt. #4 at p. 9). Again, taking Patriot at its word that there are no likely witnesses in Texas, it stands to reason that this factor similarly weighs in favor of transferring the case to the Western District of Washington, Seattle Division.

4.    *Other Practical Considerations*

As to the final private interest factor, the Court considers whether any other practical problems affect the transfer analysis. Notably, "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *In re Radmax*, 720 F.3d 285, 289 (5th Cir. 2013). Patriot seems to offer two claims in support of this factor. First, as with the matter of securing amenable witnesses, Patriot argues that the cost of transporting evidence would be significantly higher if the case remained in the Eastern District of Texas, given that the evidence is in Washington (Dkt. #4 at p. 9). Similarly, the cost necessary for depositions and the like would be higher should the case remain the Eastern District of Texas, according to Patriot (Dkt. #4 at p. 9). Second, Patriot alleges that Plaintiff would suffer no prejudice should the Court transfer the case (Dkt. #4 at p. 10). Ultimately, aside from the financial costs associated with litigating in the Eastern District of Texas, there is nothing to suggest that there are other practical considerations that weigh in either direction. On the whole, this private interest factors appears to counsel slightly in favor of transfer.

**C.    Public Interest Factors**

Next, the Fifth Circuit requires that the Court apply four non-exclusive public interest factors in determining a § 1404(a) venue transfer question: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems or conflicts of law or the application of foreign law. *Volkswagen II*, 545 F.3d at 315. Each factor is addressed in turn.

1.    *Administrative Difficulties Flowing from Court Congestion*

The first public interest factor the Court considers in its analysis is administrative difficulties that flow from court congestion. *Volkswagen II*, 545 F.3d at 315. In considering this factor, the speed with which a case can come to trial and be resolved may be relevant. *See id.* at 316; *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket."). Patriot did not address this factor whatsoever (*See* Dkt. #4). Therefore, this factor is neutral in the Court's analysis.

2.    *Local Interest in Having Localized Interests Decided at Home*

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206).

Once again, Patriot does not appear to weigh this factor directly (*See* Dkt. #4). Instead, Patriot argues that "this cause of action is substantially more connected to Washington than Texas" (Dkt. #4 at p. 10). The Court construes that argument to be one targeted at the local interest factor. Patriot argues that "the Northern [sic] District of Texas has no interest in resolving a dispute where the occurrence giving rise to the allegations took place in Washington, and the insurance policy involved in this matter was issued to a Washington resident" (Dkt. #4 at pp. 10–11). The Eastern District of Texas does, however, have an interest in presiding over matters in which Texas citizens are alleged to have been harmed, as Patriot appears to concede (Dkt. #4 at p. 11). Patriot is a Massachusetts corporation with a principal place of business in Wisconsin (Dkt.

17

#1 at p. 3), and Texas Auto is a citizen of Texas (Dkt. #1 at pp. 2–3). Critically, Texas Auto is the party that Patriot is alleged to have wronged—not the Washington resident who was driving the vehicle at the time of the collision which rendered the vehicle a total loss. Indeed, the driver is not even a party to this suit (*See* Dkt. #4). While the driver's conduct may underly Patriot's denial of Texas Auto's claim, it is still Patriot—not the driver—whom Texas Auto asserts claims against. Thus, if any forum has a superior interest in litigating the case, it is the Eastern District of Texas. Not Washington.

　　　　　　3.　　*Familiarity of the Forum with the Law Governing the Case*

Next, the Court considers whether the familiarity of the forum with the matter's governing law affects the transfer analysis. This case is brought under Texas common law and statutory law (*See* Dkt. #2). Specifically, Plaintiff brings promissory estoppel and breach of contract claims under Texas law, as well as claims under Texas's DTPA and the Texas Insurance Code (*See* Dkt. #2).

Patriot argues that the law of Washington law applies to the lawsuit (Dkt. #4 at p. 11). In support, Patriot alleges that because Texas uses the "most significant relationship test" to determine which state's law applies to a dispute, and because all of the relevant conduct underlying this case occurred in Washington, Washington law will apply (Dkt. #4 at p. 11). Thus, before considering this factor, the Court must determine which law governs this case.

The Court returns to the familiar principle that federal courts apply the choice-of-law rules of the state in which it sits. *United States ex rel. Varco Pruden Bldgs. v. Reid Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998). Thus, here, the Court must apply Texas's choice-of-law rules. As the Fifth Circuit has observed, Texas courts decide choice-of-law issues by using the Second Restatement of Conflict of Laws' "most significant relationship" test. *Benchmark Elecs., Inc. v.*

*J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). "Texas law gives effect to choice-of-law clauses regarding construction of a contract." *Id.* "The place where the contract was to be performed is the most important factor under the most significant relationship test, and may be 'conclusive in determining what state's law will apply.'" *Baily v. Shell W., E&P, Inc.*, 609 F.3d 710, 724–25 (5th Cir. 2010) (quoting *Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 54 (Tex. 1991)). At the same time, the Restatement "provides two sequential analyses, the second of which is conditioned on the inapplicability of the first." *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.). Section 6 of the Restatement reads:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. L. Inst. 1971).[7] In short, courts must apply local choice-of-law statutory provisions unless doing so would be unconstitutional. *Stevenson*, 608 S.W.3d at 117 (citing Restatement (Second) of Conflict of Laws § 6(1) cmt. a (Am. L.

---

[7] Sections 188 and 145 of the Restatement (Second) of Conflict of Laws may also weigh in the ultimate choice-of-law analysis. *See TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 419–20 (E.D. Tex. 1998).

INST. 1971)). While Texas generally applies the "most significant relationship" test, the Texas

Legislature provides a statutory provision that determines the choice of law in this case in the

Texas Insurance Code. To reiterate, this case contemplates the breach of an insurance contract.

Though Patriot did not raise the issue in its Motion, the Texas Insurance Code (which Plaintiff

complains of Defendant violating), states that:

> Any contract of insurance payable to any citizen or inhabitant of this State by any
> insurance company or corporation doing business within this State shall be held to
> be a contract made and entered into under and by virtue of the laws of this State
> relating to insurance, and governed thereby, notwithstanding such policy or
> contract of insurance may provide that the contract was executed and the premiums
> and policy (in case it becomes a demand) should be payable without this State, or at
> the home office of the company or corporation issuing the same.

TEX. INS. CODE ANN. art. 21.42. Because Plaintiff, a citizen of Texas, seeks the proceeds of the

insurance policy as the loss payee of that policy, it would seem at this preliminary stage that Article

21.42 might apply to compel the application of Texas law. *See Taylor v. Root Ins. Co.*, 109 F.4th 806,

808 (5th Cir. 2024) ("The Texas Insurance Code states that Texas law applies to insurance

contracts payable to inhabitants of the state."); *cf. Zurich Am. Ins. Co. v. Vitus Marine, LLC*, No.

CIV.A. H-11-3022, 2011 WL 4972025, at *3 (S.D. Tex. Oct. 19, 2011) (determining in the context

of a motion to transfer venue that Article 21.42 did not apply because the company the insurance

proceeds were to be paid to was not a Texas citizen).[8]

---

[8] The Court notes that "under Texas law, there is a presumption that the parties intended their insurance contract to
be evaluated under the law of the state 'where the contract was made.'" *Zurich*, 2011 WL 4972025, at *4 (quoting
*Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968)). But applied here, that presumption is
of no assistance as neither party has alleged any facts regarding where the contract was made (*See* Dkt. #2; Dkt. #4).

Additionally, the Court recognizes that Article 21.42 of the Texas Insurance Code is to be construed narrowly so as
to ensure it does not have extraterritorial effect. *Id.* But here, there is nothing to suggest that application of Article
21.42 to the facts of this case would arm Article 21.42 with extraterritorial teeth—Plaintiff is a Texas citizen. *Cf. id.*

But the applicability of Article 21.42 is a sticky thicket that requires a fact-laden analysis. This Judicial District has analyzed the applicability of Article 21.42 before at length. *See TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 414–19 (E.D. Tex. 1998) (collecting cases and considering the applicability of Article 21.42). The Court, not being equipped with sufficient facts to perform the analysis in full, does not endeavor to do so here. Instead, it is enough to say that Texas law *may* apply to that claim, depending on how the facts of the case develop.

Regarding Plaintiff's common law claims, it seems that Washington has the most significant relationship to the events giving rise to the loss. *See Fearrington v. Boston Sci. Corp.*, 410 F. Supp. 3d 794, 800 (S.D. Tex. 2019) (citing *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 291 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("Texas law requires a claim-by-claim choice of law analysis."); *Scottsdale*, 175 S.W.3d at 291 ("Except when a contract with a valid choice of law clause applies, Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue."). As Patriot notes, the accident giving rise to the loss occurred in Washington and Patriot issued the insurance policy at issue to a Washington resident, ostensibly which was to be performed in Washington (*See* Dkt. #4 at pp. 1–2). While the Court at this juncture lacks sufficient information to determine finally that Washington law applies to all of these common-law claims, for purposes of this factor, it seems that Washington law is more likely to apply than Texas law. The parties have also given the Court no guidance on the issue of choice of law as it relates to Plaintiff's DTPA claim, and the Court will not strain to piece together arguments on that issue in an effort to weigh this factor, especially because the Court has already highlighted that it needs further facts to engage in a proper choice-of-law inquiry.

Critically, as to the insurance contract itself, nothing in the record before the Court indicates that there was a valid choice-of-law clause in the insurance contract. Further, the parties have submitted little information related to where the contract was formed or to be performed, though ostensibly the contract was to be performed in Washington (*See* Dkt. #4-1). Given the paltry state of the record and briefing before the Court, the Court hesitates to determine the question of choice of law finally. Thus, assuming without deciding that a mix of both Texas and Washington law will apply to the claims at hand, this factor is neutral in the Court's analysis. Assigning any more weight to this factor would require the Court to speculate as to facts that are not in the record, though they would have been if the parties briefed this issue fully and if Plaintiff responded. Alas, because the record lacks the sufficient factual basis that the Court needs to perform a full choice-of-law analysis, the Court must assign this factor no weight and weigh it neutrally in its analysis.

4.    *Avoidance of Conflict of Laws*

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed v. Bruck*, 30 F.4th 413, 436 (5th Cir. 2022) (quoting *Volkswagen II*, 545 F.3d at 315). Patriot advances no argument relating to this factor. The Court finds that both it and federal courts in the Western District of Washington can resolve conflicts of law issues in this case equally well should any such issue arise. Therefore, this factor is neutral in the Court's inquiry.

Ultimately, the net sum of the private and public interest factors suggest that this case should be transferred to the Western District of Washington, Seattle Division. The private interest factors weigh strongly in favor of transfer, and the public interest factors, at this juncture, appear to be rather neutral. The balance of factors is sufficient to rise to the level of good cause for the

action to be transferred. Therefore, the Court will exercise its discretion to transfer this case. *See Balawajder*, 160 F.3d at 1067.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss or Alternatively Transfer Venue (Dkt. #4) is hereby **GRANTED in part and DENIED in part.** Defendant's Motion to Dismiss pursuant to the doctrine of *forum non conveniens* is **DENIED**. Defendant's Motion to Transfer this case pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. This case is hereby transferred to the Western District of Washington, Seattle Division.

**IT IS SO ORDERED.**
 **SIGNED this 7th day of March, 2025.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

23